## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankr. No. 18-23447-JAD |
| TPE INDUSTRIES, INC. et al.[1] | Chapter 11<br>Jointly Administered |
| Debtors. | |
| IN RE: | Bankruptcy Case No. 18-23447-JAD |
| **TPE INDUSTRIES, INC.,** | Chapter 11 |
| Debtor. | |

--------------------------------------------------------------------------------

## TPE INDUSTRIES, INC.'S CHAPTER 11 PLAN
## DATED MARCH 20, 2019

--------------------------------------------------------------------------------

Kirk B. Burkley, Esq.
BERNSTEIN-BURKLEY, P.C.
707 Grant Street, Suite 2200
Pittsburgh, PA  15219
Tel:  (412) 456-8100

---

[1] The Debtors in these cases are (i) TPE Industries, Inc. (Case No. 18-23447-JAD); T.P. Electric, Inc. (18-23448-JAD); TP Automation, LLC. (Case No. 18-23449-JAD); and TP Electric & Power, LLC. (Case No. 18-23450-JAD).

# TABLE OF CONTENTS

ARTICLE I:  Definitions ............................................................................................. 2

ARTICLE II:  Interpretation; Application of Definitions; Rules of Construction; and Computation of Time ............................................................................................. 7

ARTICLE III:  Administrative Expense Claims ...................................................... 8

ARTICLE IV:  Classification of Claims and Interests ............................................ 9

ARTICLE V:  Treatment of Allowed Claims Under the Plan ................................ 10

ARTICLE VI:  Treatment of Executory Contracts and Unexpired Leases ............................ 12

ARTICLE VII:  Acceptance or Rejection of the Plan ............................................ 13

ARTICLE VIII:  Means of Implementation of the Plan ........................................ 13

ARTICLE IX:  Distributions Under the Plan ....................................................... 15

ARTICLE X:  Disputed Claims .......................................................................... 18

ARTICLE XI:  Abandonment of Property ........................................................... 19

ARTICLE XII:  Conditions Precedent to Effective Date ...................................... 20

ARTICLE XIII:  Effects of Confirmation ............................................................ 21

ARTICLE XIV:  Injunctions and Indemnification ............................................... 23

ARTICLE XV:  Retention of Jurisdiction ........................................................... 25

ARTICLE XVI:  Miscellaneous Provisions ......................................................... 28

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankr. No. 18-23447-JAD |
| TPE INDUSTRIES, INC. et al. | Chapter 11<br>Jointly Administered |
| Debtors. | |
| IN RE: | Bankruptcy Case No. 18-23447-JAD |
| **TPE INDUSTRIES, INC.,** | Chapter 11 |
| Debtor. | |

## DEBTOR'S CHAPTER 11 PLAN
## DATED MARCH 20, 2019

TPE Industries, Inc., the above captioned debtor and debtor-in-possession, hereby this Chapter 11 Plan of Reorganization Dated March 20, 2019 (the "**Plan**").

On August 30, 2018, TPE Industries, Inc. (the "**TPE**" or "**Debtor**") and its affiliates filed a voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania. On September 04, 2018[2], the Court entered an order (Doc. No. 18), allowing the related bankruptcy cases of the Debtors[3] to be jointly administered under Bankr. No. 18-23447-JAD. TPE is the parent company to T.P. Electric, Inc. ("**Electric**"), T.P. Electric & Power, LLC ("**Power**"), TP Automation, LLC ("**Automation**"), and TP Payroll Services, LLC ("**Payroll**"). TPE is the sole member/shareholder of the Subsidiaries.

On February 04, 2019, the Debtors filed an *Expedited Motion for Entry of an Order Approving Settlements Pursuant to Federal Rule of Bankruptcy Procedure 9019*. The Settlement Motion sought approval for settlement of claims related to the Project. The Project involved the construction of a facility for MarkWest to assist MarkWest in recovering ethane from gas production at its large Majorsville processing complex. SSSI, Inc., a/k/a Songer Services, Inc., a/k/a Songer Steel Services, Inc. was the general contractor for the Project.

---

[2] The Debtors in these cases are (i) TPE Industries, Inc. (Case No. 18-23447-JAD); T.P. Electric, Inc. (18-23448-JAD); TP Automation, LLC. (Case No. 18-23449-JAD); and TP Electric & Power, LLC. (Case No. 18-23450-JAD).
[3] All capitalized terms not defined herein shall have the meaning set forth under Section 1.0 of the Plan.

The Debtors reached various settlement agreements with MarkWest, Songer, the Local #141 Claimants, and the Suppliers to resolve claims arising from the Project. On February 19, 2019, the Court entered an *Order of Court* approving the Settlement Motion. Pursuant to the various settlement agreements attached as exhibits to the Settlement Motion, Songer and MarkWest paid Electric the total amount of $4,000,000.00 in settlement of all claims related to the Project. MarkWest made payment directly to the Local #141 Claimants and Suppliers and the remaining balance of $2,022,316.03 was paid to Electric.

The approval of the Settlement Motion has allowed the Debtor to resolve significant claims against the Debtor and its estate. The Debtor proposes the following plan regarding the distribution of the Settlement Funds and the funds to be generated by the Debtor in the ordinary course of business.

**ARTICLE I**
**DEFINITIONS**

Unless the context otherwise requires, the following terms, when used in the Plan, shall have the meanings set forth below:

**1.0**     **Definitions**

**1.1**     **"503(b)(9) Claim"** means an Allowed Claim pursuant to section 503(b)(9) of the Bankruptcy Code.

**1.2**     **"Administrative Bar Date"** means the last date on which a request for payment of an Administrative Expense Claim may be filed, as set forth in Section 3.3 of the Plan.

**1.3**     **"Administrative Expense Claim"** means a claim for any cost or expense of administration of the Chapter 11 Case allowed under sections 503(b) or 507(b) of the Bankruptcy Code and entitled to priority under 507(a)(l) of the Bankruptcy Code, including, without limitation, (a) fees payable under 28 U.S.C. § 1930, (b) any actual and necessary costs and expenses of preserving the Debtor's estate, (c) any actual and necessary costs and expenses incurred operating the Debtor's business in the ordinary course, and (d) any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under section 330 or 503 of the Bankruptcy Code.

**1.4**     **"Adversary Proceeding"** means the adversary proceeding against Songer at Adv. Pro. No. 18-02159-JAD.

**1.5**     **"Allowed"** means, with respect to a Claim, (a) any Claim that has been listed by a Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no contrary proof of claim or interest has been filed, (b) any properly and timely filed, liquidated, noncontingent Claim with respect to which no objection to the allowance thereof has been filed within the applicable period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order of the Bankruptcy Court, or (c) any Claim allowed pursuant to the Plan, the

2

Confirmation Order or a Final Order of the Bankruptcy Court.  Unless otherwise specified in the Plan or in a Final Order allowing such Claim, "Allowed" in reference to a Claim shall not include (a) interest on the amount of such Claim accruing from and after the Petition Date, (b) punitive or exemplary damages, or (c) any fine, penalty or forfeiture.

      **1.6**     **"Allowed Amount"** means the sum at which a Claim is Allowed.

      **1.7**     **"Allowed Claim(s)"** means any Claim (a) a proof of which was Filed within the applicable period of limitation fixed by the Court in accordance with Bankruptcy Rule 3003(c)(3) and as to which the Debtor or other party in interest have not Filed an objection on or before the expiration of the time period set forth for the objection to such claim in the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, or as to which, and to the extent, any objection has been determined by a Final Order in favor of the relevant Claim Holder; (b) listed on the Schedules as other than disputed, contingent, or unliquidated for which the Debtor or other interested party has not filed an Objection pursuant to Article IX of the Plan; (c) that has been allowed by a Final Order of the Court (provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan shall not be considered Allowed Claims hereunder); and (d) expressly allowed or pursuant to the terms of the Plan.

      **1.8**     **"Assets"** means all the assets of the Estate, including without limitation the Intellectual Property Rights.

      **1.9**     **"Bankruptcy Case"** means this Chapter 11 Case at Bankruptcy Case Number 18-23447-JAD.

      **1.10**     **"Bankruptcy Code"** means title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, as amended and in effect as of the Petition Date.

      **1.11**     **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Western District of Pennsylvania.

      **1.12**     **"Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under 8 U.S.C. § 2075, and (b) the local rules of the Bankruptcy Court, in each case, as in effect on the Petition Date.

      **1.13**     **"Business Day"** means any day other than (a) a Saturday; (b) a Sunday; and (c) any other day on which the Court is required or authorized to close.

      **1.14**     **"Cash"** means legal tender of the United States of America.

      **1.15**     **"Causes of Action"** means any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims, remedies (including without limitation any remedy based on theories of equitable subordination or similar equitable relief) and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

      **1.16**     **"Claim"** means any claim against the Debtor, whether or not asserted, known or unknown, as the term "claim" is defined in section 101(5) of the Bankruptcy Code.

**1.17** **"Claim Holder"** means any holder of claims in any class, as defined herein, entitled to receive a Distribution under the Plan, whether or not such Claims were Allowed Claims on the Effective Date.

**1.18** **"Class"** means each of the groups of substantially similar Claims classified in Article II of the Plan and pursuant to section 1129(a)(1) of the Bankruptcy Code.

**1.19** **"Collateral"** means any property or interest in property of the Debtor's Estate that is subject to a valid lien to secure the payment or performance of a Claim, which lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.20** **"Confirmation Date"** means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

**1.21** **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan, as it may be adjourned or continued from time to time.

**1.22** **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.23** **"Court Order"** means any order entered in the Chapter 11 Case by the Court.

**1.24** **"Debtor"** means the TPE Industries, Inc.

**1.25** **"Debtor in Possession"** means the Debtor in its capacity, prior to appointment of the Trustee, as debtor-in-possession in the Chapter 11 Case under Sections 1101, 1107(a), 1108, and 1116 of the Bankruptcy Code.

**1.26** **"Debtors"** means collectively TPE Industries, Inc., T.P. Electric, TP Automation, LLC and TP Electric & Power LLC.

**1.27** **"Disallowed"** means a Claim that has been disallowed by Final Order when used with respect to a Claim.

**1.28** **"Disclosure Statement"** means the Disclosure Statement to the Plan, including the exhibits, appendices and schedules thereto, as the same may be amended, modified or supplemented from time to time and as approved by the Bankruptcy Court pursuant section 1125 of the Bankruptcy Code.

**1.29** **"Disputed"** means, with respect to any Claim, any Claim that is not Allowed or disallowed, or any Claim with respect to which an objection has been filed and is pending before the Bankruptcy Court.

**1.30** **"Disputed Claim"** means any Claim against the Debtor (i) that the Debtor has scheduled as unliquidated, disputed, or contingent, (ii) to which a party in interest has objected, or (iii) that has not become an Allowed Claim. Wherever in the Plan the word "Disputed" precedes a defined term describing a Claim, that phrase will mean a Disputed Claim of the type described.

**1.31** **"Disputed Claim Amount"** means, with respect to a Disputed Claim, (a) if a liquidated amount is set forth in the proof of claim relating to such Claim, (i) the liquidated amount set forth in the proof of claim relating to such Claim, (ii) an amount agreed to by the Debtor and the holder of such Claim, or (iii) if a request for estimation if filed by any party, the amount at which such Claim is estimated by the Bankruptcy Court, (b) if no liquidated amount is set forth in the proof of claim relating to such Claim, (i) an amount agreed to by the Debtor and the holder of

4

such Claim or (ii) the amount estimated by the Bankruptcy Court with respect to such Claim, or (c) if such Claim was listed on the Schedules as unliquidated, contingent, or disputed and no proof of claim was filed, or deemed to have been filed, by the applicable deadline to file such Claim and such Claim has not been resolved by written agreement of the Debtor and the holder of such Claim or by an order of the Bankruptcy Court, zero.

1.32 **"Distribution(s)"** means the distributions of Cash or other property of the Estate to be made in accordance with the Plan.

1.33 **"Effective Date"** is the date of the entry of the Confirmation Order, *provided that* all of the conditions precedent set forth in section 12.2 hereof are satisfied.  If a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first Business Day after that date on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated and provided that all of the conditions precedent set forth in section 12.2 hereof are satisfied.

1.34 **"Entity"** means an entity as defined in section 101(15) of the Bankruptcy Code.

1.35 **"Electric"** means T.P. Electric, Inc.

1.36 **"Estate"** means the estate of the Debtor created by section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Case.

1.37 **"Estate Litigation"** means all claims, Causes of Action, and Recovery Actions of the Estate against third-parties including, but not limited to, any claims against creditors, and/or litigation or claims instituted or asserted by the Debtor prior to the Effective Date.

1.38 **"Estate Member Interest"** means the percentage membership interest of the Estate in BRC.

1.39 **"File"** or **"Filed"** means, with respect to any pleading, entered on the docket of the Chapter 11 Case and properly served in accordance with the Bankruptcy Rules.

1.40 **"Final Order"** means an order or judgment of the Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Case which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, re-argument or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for a new trial, re-argument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Court shall have been affirmed by the highest court to which such order was appealed or certiorari shall have been denied or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order not to be a Final Order.

1.41 **"Impaired"** means, with respect to any Claim, a Claim with respect to which the Plan alters the legal, equitable or contractual rights to which such Claim entitles its holder.

**1.42** **"Insider"** shall have the same meaning as more fully defined in Section 101(31) of the Bankruptcy Code.

**1.43** **"Local #141 Claimants"** means collectively 1) the National Electric Benefit Fund, 2) Board of Trustees of the International Brotherhood of Electrical Workers #141 Profit Sharing Plan, 3) Board of Trustees of the International Brotherhood of Electrical Workers Local #141 Vacation Plan, 4) Board of Trustees of the WV-OH Supplemental Health Plan, 5) Board of Trustees of the IBEW 4th District Health Plan, 6) Board of Trustees of the International Brotherhood of Electrical Workers Joint Apprenticeship & Training Committee, and 7) International Brotherhood of Electrical Workers Local #141.

**1.44** **"MarkWest"** means MarkWest Energy Partners, L.P.

**1.45** **"Petition Date"** means August 30, 2018, the date on which the Debtors commenced the Chapter 11 Case.

**1.46** **"Plan"** means this Chapter 11 Plan, including all schedules and exhibits hereto or thereto, as the same may be amended, modified or supplemented from time to time in accordance with its terms and applicable provisions of the Bankruptcy Code.

**1.47** **"Priority Claim"** means any Claim of a kind specified in section 502(i) or 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

**1.48** **"Priority Tax Claim(s)"** means any Claim against the Debtor to the extent entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.49** **"Professional"** means any person or Entity employed pursuant to a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and including the Confirmation Date pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.50** **"Project"** means the construction of a facility of MarkWest to assist MarkWest in recovering ethane from gas at its large Majorsville processing complex.

**1.51** **"Proof of Claim"** means any proof of claim filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002.

**1.52** **"Proponent of the Plan"** means the Debtor.

**1.53** **"Recovery Actions"** means, collectively and individually, without limitation, preference Claims or Causes of Action, fraudulent conveyance Claims or Causes of Action, rights of setoff and other Claims and Causes of Action under sections 510, 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and other applicable bankruptcy and non-bankruptcy law.

**1.54** **"Schedules"** means the schedules, statements and lists filed by the Debtor with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been and may be amended or supplemented from time to time.

**1.55** **"Secured Claim(s)"** means a Claim secured by Collateral.

**1.56** **"Secured Creditor(s)"** means a creditor holding a Secured Claim.

**1.57** **"Settlement Funds"** means the total amount of $2,022,316.03.

**1.58** **"Settlement Motion"** means *Expedited Motion for Entry of an Order Approving Settlements Pursuant to Federal Rule of Bankruptcy Procedure 9019* filed by the Debtor on February 04, 2019.

**1.59** **"Somerset"** means Somerset Trust Company.

**1.60** **"Songer"** means SSSI, Inc., a/k/a Songer Services, Inc., a/k/a Songer Steel Services, Inc.

**1.61** **"Suppliers"** means collectively Mayer Electric, Inc., Scott Electric Company Anixter, Inc., and Consolidated Electrical Distributors.

**1.62** **"Unimpaired"** means a Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code and paragraph 1.39, above.

**1.63** **"Union Action"** means litigation in United States District Court for the Northern District of West Virginia at 5:17-cv-00182.

**1.64** **"United States Trustee"** means the United States Trustee appointed under 28 U.S.C. § 591 to serve in the Western District of Pennsylvania.

**1.65** **"Unsecured Claim"** means any Claim that is neither secured nor entitled to priority under the Bankruptcy Code or by a Final Order of the Bankruptcy Court, including, but not limited to: (a) any claim arising from the rejection of an executory contract or unexpired lease under section 365 of the Bankruptcy Code, and (b) any portion of a Claim to the extent the value of the holder's interest in the Estate's interest in the property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to section 506(a) of the Bankruptcy Code.

**1.66** **"Westmoreland County Action"** means litigation in the Court of Common Pleas of Westmoreland County, Pennsylvania at civil action number 555 of 2018.

**1.67** **"West Virginia Action"** mean foreclosure action against MarkWest in the Circuit Court of Marshall County, West Virginia, Civil Action No. 18-C-149.

## ARTICLE II

## INTERPRETATION; APPLICATION OF DEFINITIONS; RULES OF CONSTRUCTION; AND COMPUTATION OF TIME

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially in that form or substantially on those terms and conditions; (b) any reference in the Plan to an existing document or exhibit Filed or to be Filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; and (c) unless otherwise specified, all references in the Plan to Articles, Schedules, and Exhibits are references to articles, schedules, and exhibits of or to the Plan. Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan. A capitalized

term used but not defined herein shall have the meaning given to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

The headings in the Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Plan.  Unless otherwise indicated herein, all references to dollars are to United States dollars.

Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

## ARTICLE III

## ADMINISTRATIVE EXPENSE CLAIMS

**3.1    Administrative Expense Claims**

### 3.1.1    General

Each Allowed Administrative Claim shall be paid by the Debtor in Cash, in full, by the later of (1) the Effective Date, or (ii) five (5) Business Days after the date such Claim becomes an Allowed Claim or in such amounts and on such other terms as may be agreed on between the Holder of such Claim and the Debtor, or otherwise is ordered by the Court.

### 3.1.2 Judicial Fees

All fees comparable to the fees payable pursuant to 28 U.S.C. § 1930, if and to the extent due, shall be paid in Cash in the full amount of such Claim when due.  Debtor shall timely pay post-confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing this Chapter 11 Case, or enters an order either converting this case to a case under Chapter 7 of the Bankruptcy Code or dismissing this case.  The Debtor shall file with the Bankruptcy Court, and shall transmit to the United States Trustee, a true and correct statement of disbursements made by the Debtor for each month that this Chapter 11 Case remains open, in a format prescribed by the United States Trustee.

**3.2**    **Professional Compensation**

Professionals or other Entities asserting Administrative Expense Claims based on professional services rendered before the Confirmation Date must File and serve the Debtor, counsel to the Debtor and such other Entities as are designated by the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order, or any other order of the Court, an application for final allowance of such Claim no later than thirty (30) days after the Confirmation Date.  Objections to any application for final allowance of compensation by Professionals must be Filed and served on the Debtor, counsel to the Debtor, and the requesting Entity by the later of (a) thirty (30) days after the Effective Date or (b) thirty (30) days after the Filing of the relevant application.

**3.3**    **Administrative Bar Date**

Any request for the payment of an Administrative Expense Claim (other than the Administrative Expense Claims of Professionals, which are addressed in Section 3.2) shall be discharged and barred forever and shall not be enforceable against the Debtor or any of the property of the Estate, unless such request for the payment of an Administrative Expense Claim is Filed and served upon the Debtor within thirty (30) days after the Effective Date.  Notwithstanding the above, in accordance with 11 USC § 503(b)(2)(D), this Plan section shall not be applicable to taxes, penalties and interest, if any, incurred by the Estate.

Holders of a 503(b)(9) Claim may submit directly to Debtor's Counsel the form attached hereto as Exhibit 1, within 30 days after the Effective Date on the following address:

BERNSTEIN-BURKLEY, P.C.
707 Grant Street, Suite 2200
Pittsburgh, PA  15219

**ARTICLE IV**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

**4.1**    **Classified Claims**

The categories of Claims listed below classify Claims for all purposes, including voting, confirmation, and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim shall be deemed to be classified in a particular Class only to the extent that such Claim qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that the remainder of such Claim qualifies within the description

9

of such different Class. A Claim is in a particular Class only to the extent that such Claim is Allowed in that Class and has not been otherwise settled prior to the Effective Date.

The classification of Claims of the Debtor pursuant to the Plan are as follows:

| Class | Class Name | Status |
|-------|-----------|--------|
| Class 1 | Secured Claims of Somerset Trust Company | Impaired – Entitled to vote |
| Class 2 | General Unsecured Claims | Impaired – Entitled to vote |
| Class 3 | Equity Security Holders | Unimpaired- Not entitled to vote |
| Class 4 | Administrative Convenience Claims | Unimpaired- Not entitled to vote |

The treatment of Claims against the Debtor is more fully set forth in Article V.

**4.2    Unclassified Claims**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified and are therefore excluded from the Classes listed above.

**4.3    Bar Date for Claims**

The Bankruptcy Court set January 22, 2019 as the Bar Date for general prepetition Claims and February 26, 2019 as the Bar Date for government Claims. As set forth in Article X hereof, the Debtor may review and object to any such Claim within 120 days after the later of: (a) the Effective Date, or (b) the date on which such Claim was filed with the Bankruptcy Court; provided, however, that such 120 day period of review may be extended by the Bankruptcy Court upon the request of the Debtor after notice and a hearing.

**ARTICLE V**

**<u>TREATMENT OF ALLOWED CLAIMS UNDER THE PLAN</u>**

The following treatment set forth in this Article V shall be accorded to Claims against the Debtor.

**5.1    Administrative Expenses.**    Administrative Expenses shall consist of fees to the U.S. Trustee, the Clerk of Courts and any professional's fees that are entitled to priority under 11 U.S.C. Section 507(a)(1). These shall include the following:

    i.    Attorneys for the Debtor, Bernstein-Burkley, P.C.

    ii.    Accountants for the Debtor, E.G. Conley, P.C.

This Class shall also include administrative expenses incurred during the Administration:

    i.    Internal Revenue Service, if any;

    ii.    Allowed 503(b)(9) Claims;

    iii.    Claims for any unpaid ongoing expenses accrued during the course of the Debtor's operation, if any;

    iv.    All U.S. Trustee's fees and Clerk of Bankruptcy Court charges, if any;

    v.    All professional fees are subject to the Bankruptcy Court's approval under Section 330(a)(1) of the Bankruptcy Code and Bankruptcy Rule 2016(a); and only to the extent professionals preserved the estate; and

Allowed Administrative Claims against the estate shall be paid in full on the Effective Date.

## 5.2    Class 1:  Secured Claims of Somerset Trust Company

Class 1 shall consist of all secured claims held by Somerset. Somerset holds a security on all of the assets for the Debtors. Somerset is the lender for various loans with an outstanding balance totaling $3,135,886.90. The Class 1 Claim shall be bifurcated into (a) a term portion, which will be $2,000,000 amortized over 20 years at 6% per annum interest, with a balloon payment due at the end of seven year after the Effective Date and (b) the balance of the Class 1 Claim will remain a revolving line of credit that shall be paid in the ordinary course of business pursuant to the revolving line of credit agreement. Somerset shall continue to maintain a security interest in all of the assets for TPE, Electric and Automation. Additionally, Somerset shall receive a security interest in all of Power's assets.

Class 1 is Impaired, and the holder of a Class 1 Claim is entitled to vote to accept or reject the Plan.

## 5.3    Class 2:  General Unsecured Claims

Each holder of a Class 2 Claim will receive 100% of the Allowed Claim of their respective Claims, on a pro rata basis to be distributed in equal quarterly installments for three years commencing on June 05, 2019.  In the alternative, holder of a Class 2 Claim may elect to receive payment of 30% of their respective claims within sixty (60) days from the Effective Date of the Plan. In order for the holder of an Allowed Claim to receive payment of 30% of the their respective claims within sixty (60) days from the Effective Date of the Plan , the holder must complete the ballot and select the alternative treatment.

Class 2 is Impaired, and the holder of a Class 2 Claim is entitled to vote to accept or reject the Plan.

**5.4     Class 3:  Equity Security Holders**

Shawn T. Porter and Thomas H. Porter shall retain their equity interest and all rights pertaining to the equity security interest held in the Debtor.

Class 3 is Unimpaired, and the holder of a Class 3 Claim is not entitled to vote to accept or reject the Plan.

**5.5 Class 4: Administrative Convenience Claims**

Each holder of a General Unsecured Claim in the amount equal to or less than hundred dollars ($100.00) shall receive 100% payment of their Allowed Claims within sixty (60) days from the Effective Date of the Plan. A holder of an Allowed Unsecured Claim in excess of hundred dollars ($100.00) may elect to reduce their respective Claim to hundred dollar ($100.00) to receive payment under Class 4. A holder of an Allowed Unsecured Claim must complete the ballot and select to reduce their claims to receive payment under Class 4.

Class 4 is Unimpaired, and the holder of a Class 4 Claim is not entitled to vote to accept or reject the Plan.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1     Assumption of Unexpired Pre- and Post-Petition Leases and Executory Contracts**

Except to the extent there has been a motion filed or Court Order entered to reject a lease or contract prior to the Effective Date, as of the Effective Date, all pre-petition executory contracts and unexpired leases to which the Debtor is a party shall be deemed assumed.  If any such Lease or Contract is specifically rejected by the Debtor, the counter-party shall file any claim for rejection damages within thirty (30) days after the Confirmation Date or such claim will be forever barred.

**6.2     Rejection Damages**

Allowed claims of any counter party, if any, to any rejected executory contract or lease shall be paid as a Class 2 Claim.

# ARTICLE VII

## ACCEPTANCE OR REJECTION OF THE PLAN

### 7.1    Holders of Claims Entitled to Vote

Classes 1 and 2 of Claims are Impaired under the Plan.  Each holder of an Allowed Claim in Class 1 and Class 2 are entitled to vote to accept or reject the Plan.

### 7.2    Acceptance by Impaired Classes

Any Class of Impaired Claims shall be deemed to have accepted the Plan if (a) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

### 7.3    Non-Consensual Confirmation

To the extent any Class is deemed to have rejected the Plan, the Plan shall be "crammed down" on the claimants within such Class pursuant to Section 1129(b) of the Bankruptcy Code.

# ARTICLE VIII

## MEANS OF IMPLEMENTATION OF THE PLAN

### 8.1    The Debtor's Duty under the Plan

#### 8.1.1    The Debtor

Upon the approval and confirmation of the Plan, the Debtor shall continue to operate as a debtor-in-possession until the Effective Date. After the Effective Date, the Debtor shall be responsible for retaining all undistributed property and continue to operate in the ordinary course of business.  The Debtor shall have all powers, authority and responsibility specified in the Plan, for purposes of carrying out the provisions of this Plan.

#### 8.1.2    Responsibilities of the Debtor

The Debtor will have those responsibilities created by this Plan upon the terms and conditions summarized herein and will, for the benefit of the Claimants, exercise the rights

13

and powers vested in it by this Plan in the same manner, and use the same degree of care and skill in their exercise, as a prudent person would exercise and use under the circumstances in the conduct of its own affairs, notwithstanding Section 345, and further agrees to receive and disburse all of the Assets in accordance with the terms hereof.

(a)    The Debtor is empowered, in its sole discretion to:

i.    perform all of the obligations and agreements of the Plan provided for herein;

ii.    The Debtor shall have sole discretion as to the disposition of any Assets and may do so without obtaining Bankruptcy Court approval, except where Bankruptcy Court approval is required under a specific provision of this Plan.  The Debtor shall cause the distribution of the Assets of the Estate in accordance with the terms of this Plan;

iii.    commence or continue Recovery Actions for the purpose of liquidating the Assets of the Estate or maximizing the value of the Estate;

iv.    possess the right to object to any Claims (disputed or otherwise), and to compromise or settle any Claims prior to objection without supervision or approval of the Court, free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the Court, and the guidelines and requirements of the United States Trustee, other than those restrictions expressly imposed by the Plan or the Confirmation Order; and/or to seek Bankruptcy Court approval, on a periodic basis, for any Claims settlements made;

v.    seek a determination of tax liability under Section 505 of the Bankruptcy Code and to pay taxes, if any, related to the Debtor, Estate or the sale of the Assets of the Debtors or Estate;

vi.    compromise or settle disputes with respect to debt obligations owed to the Debtor or the Estate;

vii.    execute and deliver all releases, satisfactions and termination statements as may be required in connection with full payment of any debt obligation secured by any lien or security interest;

viii.    enter into financing agreements to the extent necessary to supplement the cash flow of the Estate so as to allow the Debtor to maximize the liquidation value of the Assets, maximize the amounts collected pursuant to Recovery Actions and minimize amounts paid to settle liabilities, including but not limited to disputes;

ix.    engage and compensate professionals, including attorneys, accountants, investment advisors and others, to assist the Debtor in carrying out its duties hereunder which professionals include, without limitation, those retained to assist the Debtor in any litigation related to the liquidation of the Assets as well as

14

the Estate Litigation or the settlement of the Liabilities. All professionals employed by the Debtor shall be compensated by the Estate;

      x.       file or cause to be filed all required tax returns for the Estate and pay any and all taxes, if any, when due from the Assets of the Estate;

      xi.      in its sole discretion, settle, compromise, litigate to a final judgment, or abandon any Cause of Action, Disputed Claim, or Claim Objection, including but not limited to adversary proceedings brought under Chapter 5 of the Bankruptcy Code; and

      xii.      reconcile any Claims unless such allowance or settlement involves a payment to the Claimant or offset of amounts owing by the Claimant.

**8.2    Recovery Actions**

Any recovery on any Recovery Action, after the Effective Date, shall be property of the Estate and entitled to the full amount recovered by way of the Recovery Action from any party to that Recovery Action and the net amount of such recovery (after reasonable expenses of recovery) shall be used to fund additional distributions under the Plan.

**8.3    Maintenance of Books and Records**

Subject to its rights to abandon records under Section 11.1, below, the Debtor shall maintain records and books of account relating to the Estate property. The Debtor shall file or cause to be filed all required tax returns for the Estate and pay any and all taxes, if any, when due from the Estate.

## ARTICLE IX

## DISTRIBUTIONS UNDER THE PLAN

**9.1    Distributions**

The Debtor shall make all distributions required under the Plan on account of Allowed Claims in Class 2. All distributions shall be made pursuant to the terms hereof on a quarterly basis for three (3) years. The initial distribution shall be made on June 05, 2019, with the Debtor making an appropriate reserve for disputed claims.

All Allowed Class 4 Claims shall be paid in full within sixty (60) days from the Effective Date.

**9.2**  **Delivery of Distributions**

**9.2.1 General Provisions; Undeliverable Distributions**

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims shall be made by the Debtor at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on Proof(s) of Claim Filed by such holder, or (b) the last known address of such holder if no Proof of Claim is Filed or if the Debtor has been notified in writing of a change of address.  If any Distribution is returned as undeliverable, amounts in respect of any undeliverable Distributions made by the Debtor shall be returned to, and held in trust by, the Debtor until the Distributions are claimed or are deemed to be unclaimed property under section 9.7.3 hereafter.  The Debtor shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided, however*, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan.

**9.2.2 Unclaimed Property**

Except with respect to property not Distributed because it is being held on account of a Disputed Claim or is returned undeliverable under Section 9.4 below, Distributions that are not cashed by the claimant by the expiration of six (6) months from the date of the distribution check shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Debtor, and the Claims with respect to which those Distributions are made shall be automatically cancelled.  After the expiration of that three month period, the claim of any Entity to those Distributions shall be discharged and forever barred.  Nothing contained in the Plan shall require Debtor to attempt to locate any holder of an Allowed Claim.  All funds or other property that vests or revests in the Estate pursuant to this Section shall become the property of the Debtor as unclaimed property in accordance with section 347(b) of the Bankruptcy Code.

**9.3**  **Manner of Cash Payments Under the Plan**

Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Debtor or by wire transfer from a domestic bank, at the option of the Debtor.

**9.4**  **Place of Distribution**

Unless otherwise provided in the Plan, all payments to any holder of an Allowed Claim will be made to the holder of each Allowed Claim at the address of such holder as listed in the Schedules

unless the Debtor has been notified, in advance, in writing of a change of address, including, without limitation, by the timely filing of a proof of claim or interest by such holder that provides an address for such holder difference from the address reflected in the Schedules.  In the event that any payment to any holder is returned as undeliverable, no further payment to such holder will be made unless the Debtor has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such distribution will be made to such holder without interest; provided however, that, such undeliverable payments will be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of six (6) months days after the date of payment (if such holder fails to provide an updated address).  After the expiration of the six month period, all unclaimed property or interest in property shall revert to the Debtor, and the claim of the holder to such property or interest in property shall be discharged and forever barred from assertion against the Estate and its property.  The Debtor will have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Schedules, Proofs of Claim timely filed and the Debtor's books and records.

**9.5    Compliance with Tax Requirements**

In connection with making Distributions under this Plan, to the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Debtor may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the Debtor to the appropriate authority.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an undeliverable distribution in accordance with Section 9.2.1.

**9.6    No Payments of Fractional Cents**

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole cent.

**9.7     Interest on Claims**

Unless otherwise expressly provided for in the Plan, the Confirmation Order, other order of the Bankruptcy Court or as required by applicable law postpetition interest shall not accrue or be paid on any Claims.

**9.8     No Distribution in Excess of Allowed Amount of Claim**

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of that Claim.

**9.9     Setoff and Recoupment**

The Debtor may, but shall not be required to, setoff against, or recoup from, any Allowed Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that the Debtor or the Estate may have against the holder of such Allowed Claim, but neither the failure to do so nor the Allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or the Estate of any right of setoff or recoupment that any of them may have against the holder of any Allowed Claim.

## ARTICLE X

## <u>DISPUTED CLAIMS</u>

**10.1     Objection Deadline**

All objections to Disputed Claims shall be Filed and served upon the holders of each such Claim(s) within 120 days after the later of:  (a) the Effective Date, or (b) the date on which such Claim was filed with the Bankruptcy Court; unless otherwise ordered by the Bankruptcy Court after notice and a hearing.

**10.2     Estimation of Claims**

Debtor may request that the Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtor has previously objected to such Claim or whether the Court has ruled on any such objection, and the Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Court estimates any contingent or unliquidated Claim, that estimated amount

18

shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Debtor may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

**10.3    No Distributions Pending Allowance**

Notwithstanding any other provision hereof, unless ordered otherwise by a Final Order, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of the Allowed portion of the Claim unless and until the Disputed portion of the Claim is Allowed.

**10.4    Late Filed Claims Not Entitled to Distribution**

Any and all Claims filed after the applicable bar date in this case shall not be entitled to a distribution, the Debtor is not required to take any further action with respect to said claims, and this Plan shall constitute an objection to any such claim filed after the applicable bar date.

**10.5    Express Reservation of Rights to Object to Claims as Scheduled by the Debtor**

The Debtor has disclosed in the Disclosure Statement its proposed distributions to the holders of Allowed Claims.  The Debtor expressly reserves the right to object to any Claim Holder whose Claim was on the Debtor's schedules or who filed a proof of claim.

**ARTICLE XI**

**<u>ABANDONMENT OF PROPERTY</u>**

**11.1    Abandonment by the Debtor**

Debtor shall have the right to abandon in any commercially reasonable manner any other property that the Debtor reasonably concludes is of no benefit to the Estate or its creditors or that it reasonably determines, at the conclusion of Distributions or dissolution of the Estate, to be too impractical to distribute.  Such abandonment shall be (a) effected by a separate Notice or order of the Court on proper notice to the relevant parties and (b) be deemed to have been made under the Plan.

**11.2    Abandonment Claims**

If the abandonment of any Asset pursuant to the Plan (including those abandoned pursuant to section 11.1) and the Confirmation Order results in damages to a non-debtor party, any Claim for such damages shall be forever barred and shall not be enforceable against the Debtor, the Estate or its properties, successors, and assigns, unless a Proof of Claim is Filed and served upon counsel for the Debtor on or before thirty (30) days after the later to occur of (a) the entry of the Confirmation Order or (b) the date of the entry by the Court of an order authorizing abandonment of such asset.

**ARTICLE XII**

**CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE**

**12.1    Conditions Precedent to the Confirmation of the Plan**

It shall be a condition precedent to the confirmation of the Plan, that the Confirmation Order shall have been entered by the Court.

**12.2    Conditions Precedent to the Effective Date of the Plan**

The Plan shall not become effective and the Effective Date shall not occur unless and until the following conditions shall have been satisfied or waived in accordance with Section 12.3, in the Bankruptcy Cases:

    (a)    The Confirmation Order shall be a Final Order; and

    (b)    After the entry of the Confirmation Order, no modifications shall have been made to the Plan except in accordance with its provisions with respect to its modification

**12.3    Waiver of Conditions Precedent**

None of the conditions precedent in Section 12.2 may be waived or modified, in whole or in part, by the Debtor.

## ARTICLE XIII

## EFFECTS OF CONFIRMATION

**13.1    Vesting of Assets**

(a)    As of the Effective Date, title to any property of the Estate shall vest and/or re-vest in the Debtor in accordance with the terms of this Plan.

(b)    As of the Effective Date, all assets of the Estate shall be free and clear of all claims except as provided for in the Plan or the Confirmation Order.

**13.2    Release of Assets**

The Bankruptcy Court shall retain jurisdiction of the Debtor and its assets and properties until final Distributions are made the Bankruptcy Case is closed.

**13.3    Binding Effect**

Except as otherwise provided in section 1121(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor and its successors and assigns, whether or not the Claim of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

**13.4    Terms of Injunctions or Stays**

Unless otherwise expressly provided herein, all injunctions or stays arising under or entered during the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the confirmation date, shall remain in full force and effect until the closing of the Chapter 11 Case.

**13.5    Estate Litigation**

The Debtor shall retain the exclusive right to enforce any and all Recovery Actions against any person or entity.  The Debtor may pursue, abandon, or release any or all Recovery Actions as it deems appropriate, without the need to obtain approval or any or other further relief from the Bankruptcy Court.  The Debtor, in its sole discretion, may offset any such claim held against a person or entity, against any payment due such person or entity under the Plan.

21

**13.6    Injunction Against Interference with the Plan**

Upon the occurrence of the Effective Date, all holders of Claims and other parties in interest along with their respective present, future or former employees, agents, officers, directors or principals shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**13.7    Retention and Preservation of Claim Objections and Estate Litigation**

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, upon entry of the Confirmation Order, the Debtor retains the right to object to all Claims and interests asserted against it and all of the Recovery Actions, including without limitation: (1) Recovery Actions under Section 547 of the Bankruptcy Code against those parties receiving payments from the Debtor within 90 days or one year prior to the Petition Date, (2) all claims and Causes of Action disclosed in the Debtor's schedules and Statement of Financial Affairs which are incorporated herein by reference; and (3) any and all claims and Causes of Action that the Debtor held pre-confirmation including, but not limited to, claims for unpaid accounts receivable and fraudulent transfer shall vest or revest in the Debtor except as otherwise provided in this Plan.

Unless a claim or Cause of Action against a creditor or other entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtor expressly reserves such claim or Cause of Action for later adjudication by the Debtor (including without limitation, claims and causes of action not specifically identified or which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Causes of Action upon or after the confirmation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except for such claims or Causes of Action that have been released in the Plan or any other Final Order.

**ARTICLE XIV**

**INJUNCTIONS AND INDEMNIFICATION**

**14.1    Exculpation**

The Debtor, the members of the Board of Directors of the Debtor and their respective members, partners, officers, directors, employees and agents (including any attorneys, financial advisors, investment bankers and other professionals retained by such persons) shall have no liability to any person for any act or omission in connection with, or arising out of, (i) the Disclosure Statement, (ii) the Plan, (ii) the solicitation of votes for, and pursuit of confirmation of, the Plan, (iv) the formulation, preparation, implementation or consummation of the Plan, (v) the administration of the Plan or the property to be distributed under the Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, or (vi) any other act taken or omitted to be taken in connection with the Case, except for willful misconduct or gross negligence as determined by a Final Order after exhaustion of all rights of appeal, reconsideration or rehearing and, in all respects, shall be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan and the Case.

**14.2    Discharge**

Except as provided in Section 1141 of the Bankruptcy Code, the Plan, or the Confirmation Order, Confirmation of the Plan will (i) discharge the Debtor from any debt that arose before the date of such Confirmation, and any debt of a kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not – (1) a proof of the Claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (2) such Claim is allowed under Section 502 of the Bankruptcy Code; or (3) the holder of such Claim has accepted the Plan.

Except as otherwise provided in the Plan or Confirmation Order, the Confirmation Order shall act as a discharge of any and all Claims against, and all debts and liabilities of, the Debtor, as provided in Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a discharged Claim.

Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all persons who have held, currently hold or may hold a debt, Claim discharged pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions on account of any such discharged debt or Claim:  (i) commencing or continuing, in any manner, any action or other proceeding against the Debtor or its respective successors or its respective properties; (ii) enforcing, attaching, collecting or recovering, in any manner, any judgment, award, decree or order against the Debtor or its respective successors or its respective properties; (iii) creating, perfecting

23

or enforcing any lien or encumbrance against the Debtor or its respective successors or its respective properties; and (iv) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order.  Any person injured by any willful violation of such injunction will recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

**14.3    Injunction**

Except as provided in the Plan or the Confirmation Order, as of the Confirmation Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged, pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Estate, the Debtor or its successors or its properties on account of any such discharged Claims, debts or liabilities: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or the Estate; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan.

**14.4    No Discharge or Release of Claims by Government Entities**

Notwithstanding any provision in the Plan, this Order or the related Plan documents (the "**Documents**"), nothing in the Documents or the Chapter 11 Case discharges, releases, or exculpates the Debtor, or any non-Debtor from any claim, liability or cause of action of the Commonwealth of Pennsylvania or its agencies ("**Governmental Entity**"), or impairs or enjoins the ability of the Governmental Entity to pursue any claim, liability or cause of action against any Debtor or non-Debtor.  All claims, liabilities, or causes of action of, or to, any Governmental Entity are unaffected by the Plan and shall survive the Chapter 11 Case as if the case had not been commenced, and shall be paid (subject to any defenses under applicable non-bankruptcy law) in the ordinary course of business, adjudicated and/or determined and paid in the manner of and by the administrative or judicial tribunals in which such rights or claims would have been resolved or adjudicated if the Chapter 11 Case had not been commenced, in each case, to the extent required under applicable non-bankruptcy law.  Without limiting the foregoing, for the avoidance of doubt: (1) a Governmental Entity shall not be required to file any claims in the Debtor's bankruptcy case in order to be paid on account of any claim, liability or cause of action; and  (2) nothing shall affect or impair the right of any Governmental Entity to exercise its police and regulatory powers against the Debtor; In addition, nothing in this Order, the Disclosure Statement, Plan, or related documents shall release the Debtor from its continued compliance with Pennsylvania environmental law, and

continued compliance with its permits, license and registrations.  The Debtor shall retain all its rights and defenses under applicable non-bankruptcy law, including, without limitation, to challenge or dispute any claim, liability, or cause of action asserted by a Governmental Entity provided that to the extent required by applicable non-bankruptcy law, any challenge or defense must be raised in the applicable administrative review process.

**14.5   No Liability for Tax Claims**

Unless a taxing authority has asserted a Claim against the Debtor before the bar date established therefore, no Claim of such authority shall be Allowed against the Debtor for taxes, penalties, interest, additions to tax or other charges arising out of the failure, if any, of the Debtor to have paid tax or to have filed any tax return in or for the period prior to the date on which (i) the bar date occurs as to any Claim that constitutes an Administrative Expense Claim, or (ii) the bar date occurs as to any Claim that constitutes a General Unsecured Claim.

**14.6   Preservation of Rights of Action**

Except as otherwise provided in the Plan or the Confirmation Order, the Debtor, in accordance with section 1123(b) of the Bankruptcy Code, shall retain and shall have the exclusive right to prosecute and enforce any cause of action or rights to payment of claims that the Debtor or its bankruptcy Estate may hold against any person.

**14.7   Indemnification Obligations**

As of the Effective Date, the obligations of the Debtor to indemnify individuals who have served as its respective directors, officers, agents, employees, representatives and others, pursuant to its respective certificates or articles of incorporation, by-laws and applicable statutes in respect of all present and future actions, suits and proceedings against any such officers, directors, agents, employees, representatives and others, based upon any act or omission related to such service with or for or on behalf of the Debtor shall be discharged or impaired by the confirmation or consummation of the Plan.

## ARTICLE XV

## <u>RETENTION OF JURISDICTION</u>

**15.1   Retention of Jurisdiction**

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction of all matters arising out of or relating to the Case, the

Plan, the Confirmation Order, and the Estate pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)  To resolve any matters relating to the assumption and assignment or rejection of executory contracts or unexpired leases, and to hear, determine and, if necessary, liquidate any Claims resulting therefrom;

(b) To decide and resolve any and all motions, adversary proceedings, including Recovery Actions, applications, contested matters and any other matters, whether pending as of the Effective Date or brought thereafter in accordance with the terms hereof;

(c) To consider and rule on the compromise and settlement of any Claim against, or Cause of Action on behalf of, the Debtor or the Estate;

(d) To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein, and resolve any disputes concerning any such Distributions;

(e) To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (including any Administrative Expense Claim), and to resolve any and all objections to the Disputed Claims;

(f) To hear and determine any and all applications for the allowance of compensation of Professional for professional services rendered and expenses incurred prior to the Confirmation Date;

(g) To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, including but not limited to any motions filed pursuant to section 363 of the Bankruptcy Code;

(h) To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency, in the Plan or in any order of the Court as may be necessary to carry out the purposes and intent of the Plan and to implement and effectuate the Plan;

(i) To resolve any cases, controversies, suits or disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or any person's or Entity's obligations incurred in connection with the Plan;

(j) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

26

(k) To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, revoked, reversed or vacated;

(l) To enforce remedies upon any default under the Plan;

(m) To enforce, interpret, and determine any disputes arising in connection with any orders, stipulations, judgments, and rulings entered in connection with the Reorganization Case (whether or not the Reorganization Case have been closed);

(n) To resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan, or any Estate's obligations incurred in connection herewith;

(o) To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

(p) To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person or Entity with the consummation of the Plan, or the enforcement of any rights, remedies, or obligations created under the Plan;

(q) To determine such other matters as may be provided for in the Confirmation Order or other orders of the Court or as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(r) To hear any other matter if the Court's exercise of jurisdiction thereover is not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(s) To hear and determine issues relating to discharge, injunctions, covenants not to sue, and other waivers and protections provided under or relating to the Plan and

(u) To enter a final decree closing the Case.

**15.2    Modification of the Plan**

**15.2.1  Modification Before the Effective Date.**

The Debtor may alter, amend or modify the Plan or any provision or portion thereof under section 1127(a) of the Bankruptcy Code at any time prior to the Effective Date; *provided,*

*however*, that such modification (i) does not waive or modify any of the conditions precedent to the Effective Date set forth in section 12.2, and (ii) shall not materially modify to the Plan.  The Debtor shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or any Order of the Court. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as altered, amended, modified or clarified unless the proposed alteration, amendment, modification or clarification adversely changes the treatment of the Claim of, or releases granted to, such holder.

### 15.2.2  Modification Before Substantial Consummation

After the Effective Date but prior to the "substantial consummation" (as that term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Debtor may, pursuant to section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and otherwise provide for such matters as may be necessary to carry out the purpose and effect of the Plan, as long as the proceedings do not adversely affect the treatment of holders of Claims under the Plan; provided, however, that, to the extent required by the Bankruptcy Rules or an order of the Court, prior notice of any such proceedings shall be served in accordance therewith.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not adversely change the treatment of the Claim, or releases granted to, such holder.

### 15.2.3  Modification After Substantial Consummation

After "Substantial Confirmation" (as that term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Debtor may amend the Plan to provide for technical corrections to the Plan provided that such changes do not affect the interests of the claim holders.

## ARTICLE XVI

## MISCELLANEOUS PROVISIONS

### 16.1   Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a schedule or exhibit hereto or instrument, agreement, or other document executed in connection with the Plan provides otherwise, the rights, duties, and obligations arising under the Plan, and the

instruments, agreements, and other documents executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the Commonwealth of Pennsylvania, without giving effect to any choice of law provisions that would require the application of the law of any other jurisdiction.

**16.2    Notices**

To be effective, all notices, requests, and demands under the Plan must be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**To Counsel for the Debtor:**
Bernstein-Burkley, P.C.
Kirk B. Burkley, Esq.
707 Grant Street, Suite 2200
Pittsburgh, PA 15219
Fax No. 412-456-8135

**16.3    Further Documents and Actions**

The Debtor shall execute, and are authorized to file with the Court and deliver, such agreements and other documents or information, and to take or cause to be taken such actions, as may be necessary or appropriate to effect and further evidence the terms and conditions of the Plan and to consummate the transactions and transfers contemplated by the Plan.  The Debtor and all other necessary or appropriate parties shall execute any and all documents and instruments that must be executed under or in connection with the Plan in order to implement the terms of the Plan or to effectuate the Distributions under the Plan, provided that such documents and instruments are reasonably acceptable to such party or parties.

**16.4    Relationship Between the Plan and Disclosure Statement**

To the extent that the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

**16.5    Reservation of Rights**

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Case, including the Debtor, are and will be

reserved in full.  Any concessions or settlements reflected herein (if any), are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest shall be bound or deemed prejudiced by any such concession or settlement.

### 16.6    Post-Confirmation Date Fees and Expenses

After the Confirmation Date, the Debtor shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of the Professionals employed by the Debtor in connection with the implementation and consummation of the Plan, the claims reconciliation process and any other matters as to which such Professionals may be engaged.  The fees and expenses of such Professionals shall be paid pro rata along with Allowed Administrative Claims in accordance with Section 5.1 of the Plan, after submission of a detailed invoice therefore to the Debtor.  If the Debtor disputes the reasonableness of any such invoice, it shall timely pay the undisputed portion of such invoice, and submit the dispute regarding the balance of such invoice to the Court for a determination of its reasonableness.

### 16.7    Binding Effect

The provisions of this Plan shall be binding on, and shall inure to the benefit of, the Debtor, all holders of Claims or whose actions may be required to effectuate the terms of the Plan, and any current or future heir, executor, administrator, successor, assign or any person or entity claiming derivatively through or because of any of the foregoing (including, but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code).  The Confirmation Order shall provide that, after the occurrence of the Effective Date, the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting any of the Reorganization Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

IN WITNESS WHEREOF, the undersigned has duly executed the Plan as of the date first above written.

Dated:  March 21, 2019                    **TPE INDUSTRIES, INC.**

By: */s/ Shawn T. Porter*_____
        Shawn T. Porter, President

**BERNSTEIN-BURKLEY, PC,**

By: */s/ Kirk B. Burkley*_____
        Kirk B. Burkley, Esq., PA ID No. 89511
        kburkley@bernsteinlaw.com
        707 Grant Street, 2200 Gulf Tower
        Pittsburgh, PA 15219
        (412) 456-8100 (phone)
        (412) 456-8135 (fax)

        *Attorneys for Debtor*